IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC
2007 MAR 30 A 11: 12

Herbert Alonzo Robinson, ) C. A. No. 2:06-0985-RBH-RSC
#298364, (formerly SCDC )
#211603, 143203, #27925), )
  )
            Plaintiff, )
  )
        -versus- ) **REPORT AND RECOMMENDATION**
  )
Billy A. Green; Ms. Kercheck; )
Sheryl West; Penny Hamburg; )
Ms. Weinrich; Victoria )
Williams; Ms. Baker; )
Mr. Lecheny; and Ms. Gibson, )
in their individual )
capacities, )
  )
            Defendants. )

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) by a former pre-trial detainee now a state prisoner proceeding _pro se_ and _in forma pauperis_ is before the undersigned United States Magistrate Judge for a report and recommendation on

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983.

1

the defendants' motions for summary judgment. 28 U.S.C. § 636(b).

The plaintiff, Herbert Alonzo Robinson, sued Billy A. Green, Ms. Kerchek, Sheryl West, Penny Hamburg, Ms. Weinrich, Victoria Williams, Ms. Baker, Mr. Lechery, and Ms. Gibson on March 29, 2006, and alleged that he was not provided constitutionally guaranteed medical care for his diabetes while he was a pre-trial detainee at the Charleston County Detention Center (CCDC) from June 2003 through October 2003. Specifically Plaintiff claims he was not provided gluccotrol and gluccophage medications during the relevant time. Robinson sued the defendants in their individual capacities and seeks damages. He also seeks an order to the defendants that they provide him with copies of all the grievances which he alleges he filed complaining of their refusal to provide him with the aforementioned medications[2].

The defendants answered and asserted various defenses including the affirmative defense of failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA). The defendants next filed motions for summary judgment on November 8, 2006, and on November 13, 2006. On November 15, 2006, Robinson was provided a copies of the motions

---

[2] Defendants have produced all Plaintiff's grievances, requests for medical care, and medical records during discovery so this prayer for relief is moot. Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183 (1984).

2

and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Robinson opposed the motions on January 8, 2007, and on January 12, 2007. The defendants filed a reply on January 19, 2007. Plaintiff filed an affidavit on January 19, 2007, as well as on February 1, 2007. Hence it appears consideration of the motions is appropriate.

### SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56(c), a district court must enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," entry of summary judgment is mandated. Fed.R.Civ.P. 56(c). To avoid summary judgment on defendants' motion, a plaintiff must produce evidence creating a genuine issue of material fact. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, Id. at 255, 106 S.Ct. at 2513-14.

## EXHAUSTION OF REMEDIES

The defendants argued that the complaint should be dismissed for failure to exhaust administrative remedies. The PLRA requires that a prisoner[3] exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a).

In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. The PLRA provides in pertinent part as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[3] A "prisoner", is defined to mean, "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law[.]" § 1997e(h). Thus, exhaustion of administrative remedies is also required of pretrial detainees such as the plaintiff here.

4

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter, the United States Supreme Court held that "exhaustion in cases covered by 1997e(a) is now mandatory." 534 U.S. at 524. The Court noted that a district court has no discretion, as had existed prior to the PLRA, to determine whether administrative remedies needed to be exhausted in a particular case. The Court further stated that '[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Id. The Court stressed, as does the statute, that exhaustion must take place prior to the commencement of the civil action in order to further the efficient administration of justice:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

534 U.S. at 524-525 (emphasis added). Thus, it is clear from the Porter opinion that administrative remedies must be exhausted prior to the filing and pursuit of a § 1983 action. See, e.g., Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674

5

(4th Cir. 2005).

In the United States Supreme Court's recent pronouncement on the subject of exhaustion of administrative remedies, Supreme Court Justice Samuel Alito writing for the majority stated that the benefits of exhaustion can be realized only if the agency is given a full and fair opportunity to consider the grievances. Woodford v. Ngo, 126 S.Ct. 2378, 2386 (2006). Therefore, reviewing and relying upon the bodies of law regarding the exhaustion requirement of habeas corpus law under the Antiterrorism and Effective Death Penalty Act of 1996, which was enacted by Congress contemporaneously with the PLRA's exhaustion requirement, the Court held that the PLRA's exhaustion requirement requires *proper* exhaustion of administrative remedies because the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievances.

## FACTS RELATED TO EXHAUSTION OF REMEDIES

The evidence of record here is that Plaintiff filed two grievances during the relevant period, neither of which satisfy the PLRA's requirements. First, on July 16, 2003, Plaintiff filed a grievance on the CCDC form which read:

> "For approximated week now, the 'kitchen' have been, I'm informed, delivering 'Diabetic' trays to me as opposed to my prescription **'CARDIAC'** diet. On the cardiac diet **3** (three) Breads given. I also don't get boiled eggs, yet I'm given boiled eggs as opposed to either

6

      scrambled eggs or P-nut butter. The crux of my
      grievance is I'm getting diabetic trays as opposed
      to Diabetic (sic) trays and officers presumes that
      theres "no difference" in the diets. (emphasis in
      the original).

The grievance form contains a notation under the area designated, "Findings and recommendations" which reads, "The diabetic and cardiac trays contain almost all of the same items with the exception of diabetic trays receiving no concentrated sweets. You have been receiving the correct tray."

    Second, Plaintiff also filed a grievance on the CCDC grievance form on October 24, 2003. At the top of the grievance Plaintiff wrote: "Urgent and for <u>Emergency-coughing up clear red blood mixed with mucus</u>, (emphasis in the original). Plaintiff's "statement" reads:

      For some five or more days now I've
   complained to medical personnel about Flu like
   complications: Chest pain, congested sinus,
   headaches, fevers and chills. Last night I began
   to notice small traces of blood when I coughed and
   spat out flame or mucus. Alarmed I informed unit
   officers: Ms. Magwood and Ms. Henlik. They called
   medical nurse Billy Green arrived with a plastic
   flat temperature stick. He stated he wasn't going
   to assist me with any medication prior to taking
   my temperature which he noted at 99.1 [degrees].
   Today I coughed lots of blood. my sugar ranged at
   200 (High) Ms. Ofc. Brown called medical. Nurse
   Hamburg refused me any treatment. (Sic).

There is a notation under the area designated, "Findings and recommendations" which reads, "Patient seen on 10-24-03 and the above issues addressed. K. E. Baker, PA-C".

    CCDC medical records indicate that same day Plaintiff was

7

examined because of his complaint that he had a headache and was coughing up blood. He was diagnosed with sinusitis and given medication for it. Plaintiff's medications were listed as glucotrol, glucophage, and zantac. Defendant Baker also noted that his diabetes medications had recently been increased and that he would do a "follow-up" in mid-November. Plaintiff did not file another grievance after that time.

### DISCUSSION

A review of the record and relevant case law reveals the action is subject to dismissal for failure to exhaust administrative remedies as required by the PLRA.

Here the only possible reference in a grievance from the plaintiff to lack of treatment for diabetes for five months is in a single sentence at the end of a grievance about medical treatment for the flu: "my sugar ranged at 200 (High)". Additionally, that grievance was filed at the end of the five month period over which Plaintiff is suing.

A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of a § 1983 suit. Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004). Likewise, exhaustion can only be satisfied if the grievance "served its function of alerting the state and inviting corrective action." Riccardo v. Rausch, 375 F.3d 521, 524 (7th C.A. 2004). However, Robinson would have

the court find that his oblique reference to high blood sugar buried in a grievance concerning the flu and written at the end of the complained of period is sufficient to "alert the state and invite corrective action" that he was denied diabetic treatment for over five months at the CCDC.

Here it simply cannot be said that the plaintiff gave the CCDC a full and fair opportunity to investigate and address the allegations he raises in the instant action, as contemplated and required by the PLRA. Plaintiff's October 24, 2003, grievance did not timely or factually communicate the claim he brings here: that the defendants refused him gluccotrol and gluccophage medications from June 2003 through October 2003. The grievance was simply too little too late. The defendants should be granted summary judgment on plaintiff's failure to exhaust administrative remedies.

Additionally, the defendants are also entitled to summary judgment on the merits of his complaint that he received constitutionally inadequate medical care for diabetes.

### STANDARD OF REVIEW FOR MEDICAL CLAIMS

To establish a due process violation[4], Plaintiff must show

---

[4] While a claim of deliberate indifference to serious medical needs normally arises under the Eighth Amendment's cruel and unusual punishments clause, Plaintiff's claim is analyzed under the due process clause because he was a pretrial detainee and thus not subject to punishment of any kind. This distinction is of no import, however, because the inquiry as to whether officials were deliberately indifferent to serious medical needs

9

that the CCDC officials acted with deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

First, the plaintiff must show that he was deprived of an objectively serious medical need. Where there is no "serious medical need" there can be no constitutional violation for inadequate medical treatment. Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)). The "serious need" standard contemplates "a condition of urgency" that may result in "degeneration" or "extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991). Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994) and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate. See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79; Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997) (stating that "Farmer makes clear that the defendant official ... must actually have drawn the

---

is the same under both the due process clause of the Fourteenth Amendment and the cruel and unusual punishments clause of the Eighth Amendment. See, e.g., Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988).

10

inference"). A prison official is not liable if he "knew the underlying facts but believed, albeit unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982.

To meet that burden the plaintiff must show acts or omissions evidencing a sufficiently culpable state of mind to rise to the level of deliberate indifference. A showing of mere negligence will not suffice. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). Likewise, "mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law, not a constitutional, claim for medical malpractice[.]") Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

## FACTS RELATING TO MEDICAL CARE FOR DIABETES

All records related to the plaintiff and his medical treatment and his complaints have been made part of the record here. They reveal the following. In 2003 Prison Health Services (PHS) was the CCDC's health care contractor[5]. Pursuant to its

---

[5] In their brief the PHS medical defendants argue that they were/are not "state actors" and are therefore not subject to suit as they were not acting under color of law. However, where a function which is traditionally the exclusive prerogative of the state, such as providing medical care, is performed by a private entity, state action is present. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250 (1988); Ancata v. Prison Health Services, 769 F.2d

11

contract with Charleston County, PHS is an independent contractor which assumed the sole responsibility for the furnishing of a comprehensive Inmate Health Care Program for the CCDC. (Aff. Lt. Tice).

The CCDC staff completed a "receiving screening" signed by the plaintiff on June 13, 2003, when Plaintiff entered the CCDC. Question number 6 asks if the inmate has been treated for several conditions including diabetes, high blood pressure, asthma, ulcers, etc. The only condition underlined or otherwise identified is "ulcers". Plaintiff did not identify diabetes. Furthermore, Plaintiff indicated in question 7 that the only medication he was taking was Zantac for ulcers; he did list any medications for diabetes.

On August 29, 2003, two months after his detention, physician assistant and defendant Koi Baker saw Plaintiff for his gastrointestinal complaints. At that examination, Koi also diagnosed early Type II diabetes mellitus and ordered finger stick blood sugar tests for five days as well as blood work including a Hemoglobin A1C test, which is a test for diabetes. She noted that plaintiff had a family history of diabetes and that he advised her he had taken his aunt's diabetes medication previously. Importantly, plaintiff's complaint on that visit was

---

700, 703 (11th Cir. 1985)("As physicians under contract with the state, the psychiatrists were state actors subject to liabiliity under §1983.") Therefore their argument does not appear to be persuasive, or even well made, under the circumstances.

not related to diabetes symptoms but was for gastrointestinal complaints, which Baker also addressed and prescribed medication.

Plaintiff underwent blood tests on August 29, 2003, by Labcorp. The next day, August 30, 2003, at 2:00 pm, Defendant West received plaintiff's lab results, which gave a blood glucose level of 576. Nurse West contacted the physician and received orders for diabetes medications, a diabetic diet, and blood sugar checks twice a day for thirty days. At 4:30 p.m. that same day, Plaintiff's blood sugar was taken by Defendant Nurse Williams and was 394. Williams noted that plaintiff had been started on diabetic medications and that she would continue to monitor him.

Plaintiff submitted two sick call requests between his intake in June 2003 and the diagnosis of diabetes by PA Baker on August 29, 2003. On June 8, 2003, the plaintiff requested that his prescribed cardiac diet and Zantac be reinstated. He also requested treatment for athlete's foot or bleeding fungus to his feet. This sick call request did not indicate anything about diabetes. On June 27, 2003, he submitted a sick call request for coal tar shampoo for treatment of a skin rash. Again, the sick call request states nothing about treatment for diabetes. Therefore, according to plaintiff's medical records there was no indication to the defendants that the plaintiff suffered from any symptoms or complaints related to diabetes prior to his examination for gastrointestinal complaints on August 29, 2003.

Additionally, when Plaintiff was a detainee in January 2003 on unrelated charges, prior to the detention period of this complaint, he told someone on the medical staff that he had a history of diabetes. As a result, Plaintiff's blood sugar was drawn and tested and thereafter monitored for a five-day period all with normal results, indicating that he was not diabetic at that time.

Plaintiff's July 16, 2003, grievance states that he was not receiving the proper special diet; it complains that he was to receive a cardiac diet instead of a diabetic diet. The October 24, 2003, grievance alleges that he was denied medical care for flu-like symptoms and that he was coughing up blood. It does state that his blood sugar was high but plaintiff had been receiving diabetes medication since August 29, 2003. Ms. Baker evaluated Plaintiff the same day this grievance was received.

The record also contains documentation that Plaintiff was prescribed the diabetes drugs glucotrol 5 mg. from August 30, 2003, through March 1, 2004, and glucophage 500 mg. from August 30, 2003, through January 21, 2004.

In addition, although Plaintiff averred in his complaint that he "suffered significant weight loss," his medical records include a "Physician's Clinic Note" which reflects that on August 29, 2003, Plaintiff weighed 162 pounds and that two months later, he weighed 170.3 pounds.

**DISCUSSION**

This is not a difficult case. Plaintiff alleges that the defendants denied him medication and treatment for diabetes. However, the only inference to be drawn from the medical records is that there was nothing to alert the medical staff that he might have diabetes, that diabetes was diagnosed in August 2003, and that he received a plethora of treatment for diabetes including consistent monitoring of his blood sugar levels and diabetes medication throughout the remainder of his detention.

Plaintiff's allegations do not state a claim sufficient to establish that he had a serious medical need or that the defendants were deliberately indifferent to that need. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851-852 (4th Cir. 1990). The facts of this case do not come close to that standard. In fact, it appears Plaintiff received all the treatment he was entitled to receive and more.

In sum, Robinson, as the party opposing summary judgment, has failed to point to facts evidencing a genuine material issue for trial. Fed.R.Civ.P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). Summary

judgment should be granted.

Lastly, § 804 of the PLRA, amended § 1915(g), and reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The instant action, on the merits, without regard to Robinson's failure to exhaust his administrative remedies, is wholly meritless and should be considered frivolous and malicious within the meaning of the Prison Litigation Reform Act and counted as a "strike" against Robinson thereunder. 28 U.S.C. § 1915A.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended the defendants' motions for summary judgment be granted, and that the action be deemed a "strike" against Robinson under 28 U.S.C. § 1915A.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

16

Charleston, South Carolina

March 29, 2007

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).